UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS MAYS<br><br>Defendant. | ) | Case No. 4:25CR24 MTS(SPM) |

**MEMORANDUM OPINION AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant Nicholas Mays's Motion to Dismiss the Indictment. ECF No. 54. For the reasons stated below, the undersigned respectfully recommends the motion be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On January 29, 2025, a grand jury returned a single count indictment against Nicholas Mays, charging him with possessing one or more machine guns in violation of 18 U.S.C. §922(o). ECF No. 2. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§636(b). On September 2, 2025, Mays moved to dismiss the indictment on grounds that section 922(o) violates his Second Amendment right to bear arms.[1] ECF No. 54. On January 6, 2026, the United States filed its response opposing Mays's pretrial motion. ECF No. 65. On February 25, 2026, the parties appeared for a hearing on Mays's pending pretrial motions. Based on a discussion held in open court at the time of the hearing, at the parties' request, the undersigned agreed to resolve Mays's motion to dismiss based on the parties' written submissions. *See* ECF No. 76, at p. 3-4.

[1] Mays also filed a motion to suppress evidence (ECF No. 55), which will be addressed in a separate Report and Recommendation.

## DISCUSSION

Mays contends the indictment should be dismissed because the sole charge, possessing a machinegun in violation of 18 U.S.C. §922(o), violates the Second Amendment facially and as applied to him. ECF No. 54, at p. 1. Mays acknowledges that his argument may be foreclosed by current Eighth Circuit precedent in *United States v. Fincher*, which held that machineguns are "not protected by the Second Amendment" because "machine guns are not in common use by law abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." 538 F.3d 868, 874 (8th Cir. 2008). Mays suggests that *Fincher* has been undermined by developments in Second Amendment jurisprudence including the Supreme Court's 2022 decision in *New York State Rifle & Pistol Association, Inc. v. Bruen.*[2] ECF No. 54, at p. 2. Mays also suggests that application of *Bruen* and other post-*Fincher* cases would yield a different result from that reached by the Eighth Circuit in *Fincher. Id.* at p. 2-6. Citing data from the Bureau of Alcohol Tobacco and Firearms ("ATF"), Mays posits that dismissal is appropriate because even if machineguns were not in common use in 2008 when *Fincher* was decided, machineguns are in common use today. *See id.*, at p. 7 (noting that as of June 2025, there are over 2.3 million machineguns lawfully possessed and registered in the National Firearms Registration and Transfer Record ("NFRTR")).

The United States opposes Mays's motion arguing that controlling Eighth Circuit precedent, including *Fincher*, forecloses Mays's constitutional challenge to §922(o). ECF No. 65, at p. 1. The United States further argues that nothing in *Bruen* or subsequent Second Amendment cases cited by Mays called into doubt the historical tradition of prohibiting the carrying of dangerous and unusual weapons. *Id.* at p. 2. Finally, the United States argues the statistics Mays cites in support of his argument is not a sufficient

[2] 597 U.S. 1 (2022).

basis for overturning binding Eighth Circuit precedent holding that machineguns are dangerous and unusual weapons that are not protected by the Second Amendment. *Id.*

### A. Applicable Legal Standard

Under Fed. R. Crim. P. 12(b)(1), "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The propriety of granting a motion to dismiss an indictment depends largely on whether the "infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). "A motion is capable of pretrial determination if a trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting *United States v. Covington,* 395 U.S. 57, 60 (1969)). The district court must rule on such a motion before trial unless there is good cause to defer a ruling and deferral will not adversely affect a party's right to appeal. *Id.* at 605 (quoting Fed. R. Crim. P. 12(d)).

In this case, as the foregoing summary of the parties' respective arguments reflect, a "trial on the merits" is not necessary to decide Mays's pretrial motion to dismiss. Mays raises a question of law—namely, whether the statute under which he is charged, 18 U.S.C. §922(o), violates the Second Amendment both facially and as applied to him. *See* ECF No. 54, at p. 1. As such, Mays's motion to dismiss the indictment is capable of pretrial determination.

Subject to exceptions not relevant here, Section 922(o) makes it "unlawful for any person to transfer or possess a machinegun." A machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. §5845(b). The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. §5845(b).

Although Mays asserts he is making both a facial and as-applied challenge to §922(o), Mays' motion offers precious little in terms of specific facts about either the weapon or the circumstances around the conduct charged. The indictment alleges Mays violated §922(o) by possessing one or more machineguns but does not specify the type of "machinegun" Mays is accused of possessing. ECF No. 2. In his memorandum supporting the motion to dismiss Mays contends that he is "not prohibited from possessing firearms" but does not specify the type of firearm at issue in the case or the conduct that led to the charge. *See* ECF No. 54, at 1. Instead, the motion to dismiss appears to rest exclusively on Mays's possession of a firearm that falls within the definition of a machinegun. The absence of specific facts about the firearm or the circumstances leading to the charged offense makes Mays's constitutional challenge appear to be more of a facial challenge, than an as-applied challenge to §922(o). "[U]nlike a facial challenge, which challenges the law as written, an as-applied challenge considers whether the "application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Ledvina*, 166 F.4th 716, 721 (8th Cir. 2026) *cert. pending*, No. 26-525 (July 6, 2026) (quoting *United States v. Lehman,* 8 F.4th 754, 757 (8th Cir. 2021)). "A court reviewing an as-applied challenge is asked to declare a statute unconstitutional on the facts of a particular case." *Id.* Given the absence of specific facts or particular circumstances that, according to Mays, would render §922(o) unconstitutional only as applied to him, the undersigned is unable to meaningfully distinguish between Mays's as-applied challenge to §922(o)'s ban on possessing machineguns, in general, and Mays's facial challenge.

"As the Supreme Court has explained, a facial challenge is really just a claim that the law or policy at issue is unconstitutional in ***all*** its applications, regardless of individual circumstances." *United States v. Veasley,* 98 F.4th 906, 909 (8th Cir. 2024), *cert. denied*, No. 24-5089 (Oct. 7, 2024) (internal quotations omitted) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)) (emphasis in *Veasley*). Thus, to prevail on a facial challenge, Mays must "establish that no set of circumstances exists under which the Act would

be valid." *United States v. Rahimi*, 602 U.S. 680, 689 (2024)) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).[3]

### B. Mays's Constitutional Challenge Is Foreclosed By Eighth Circuit Precedent in *Fincher* and *Charles*

As the United States points out in its response, *see* ECF No. 65, at p. 1, and as Mays himself acknowledges, *see* ECF No. 54, at p. 1, Mays's constitutional challenge to §922(o) appears to have been foreclosed by Eighth Circuit precedent. The Second Amendment states, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court struck down "a District of Columbia prohibition on the possession of usable handguns in the home," finding that the statute violated the Second Amendment. 554 U.S. 570, 573 (2008). The Supreme Court explained "that the Second Amendment...codified a preexisting right" for individuals to "possess and carry weapons in case of confrontation." *Id.* at 592. However, the Court recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and can be subject to certain restrictions, such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626.

---

[3] The undersigned notes that although Mays offered no evidence or information about the firearm or the circumstances surrounding the charge in the motion to dismiss, evidence submitted in connection with Mays's separate motion to suppress evidence demonstrates that the "machinegun" at issue was a Glock 21 handgun equipped with a machinegun conversion device. ECF No. 55, at p. 1. The undersigned is reluctant to consider this evidence in the context of Mays's asserted as-applied challenge because Mays did not offer these facts in support of his motion to dismiss and the United States did not have an opportunity to respond. However, the undersigned notes that Mays's as-applied challenge would likely fail even when evidence or information from Mays's suppression motion is considered. The weapon seized from Mays was a firearm that had been converted to fully automatic fire—in other words, it fits within the statutory definition of a machinegun. In *Fincher,* the Eighth Circuit determined that machineguns are not protected by the Second Amendment because they are not in common use by law abiding citizens for lawful purposes and therefore "fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Fincher,* 538 F.3d at 874. Even if Mays is correct that *Fincher's* conclusion about machineguns no longer holds true, *Fincher* is binding on this Court because for the reasons discussed below, as far as the undersigned has been able to determine, *Fincher* has not been overruled by an act of Congress, the Supreme Court, or an *en banc* decision by the Eighth Circuit.

Although the Supreme Court did not squarely address the question of whether § 922(o)'s machine-gun ban violates the Second Amendment in *Heller*, the Supreme Court's majority opinion in *Heller* observed that interpreting its precedent to "mean that only those weapons useful in warfare are protected [such as machineguns] . . . would be a startling reading . . . since it would mean that the National Firearms Act's restrictions on machineguns ... might be unconstitutional." *See* 554 U.S. at 624 (discussing *United States v. Miller*, 307 U.S. 174 (1939) and that opinion's analysis of the Second Amendment). The Court held that "[i]n the colonial and revolutionary war era, small-arms weapons used by militiamen and weapons used in defense of person and home were one and the same." *See id.* (quoting *State v. Kessler,* 614 P.2d 94, 98 (1980)). The Court held the Second Amendment's protection extended to "those in common use at the time," and that limitation is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id.* at 627. The Court explained that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.* at 627. The Court acknowledged that while it may well be true today that "small arms" would not be useful "against modern-day bombers and tanks" that modern-day reality did not justify construing the Second Amendment to protect the possession of weapons that may be most useful in military service but unusual in society at large such as "M-16 rifles and the like." *Id.*

Two months after *Heller* was decided, the Eighth Circuit addressed the constitutionality of §922(o) in *United states v. Fincher,* 538 F.3d 868 (8th Cir. 2008). The defendant in *Fincher* was charged with one count of possession of a machinegun, in violation of §922(o) and one count of possession of a sawed-off shotgun, in violation of 26 U.S.C. §§5841, 5861(d) and 5871. *Id.* at 870. At trial defendant asserted an affirmative defense, based on Eighth Circuit precedent, that he was constitutionally entitled to possess the guns. *Id.* at 870. The trial judge allowed the defendant to present evidence out of jury's presence related

to his affirmative defense. *Id.* at 870-71. The defendant was convicted by the jury and appealed arguing, among other things, that the trial court erred by concluding that his possession of the firearms was not protected by the Second Amendment. *Id.*

On appeal, the Eighth Circuit applied *Heller* and affirmed the defendant's conviction for unlawful possession of a machine gun under 18 U.S.C. § 922(o). *Id.* at 873-74. In so doing, the court rejected the defendant's argument that his possession of a machine gun was protected by the Second Amendment and held that, under *Heller*, "machine guns are not in common use by law abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Id.* at 874. [4]

After *Heller* and *Fincher,* the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022). *Bruen* involved a challenge to a New York gun licensing law that required law abiding citizens to satisfy a "proper cause" standard before they could obtain a license to carry a handgun in public. The proper cause standard required applicants to show a special need beyond that of the general community. The Supreme Court held that the Second Amendment protected a person's right to carry a handgun for self-defense and, therefore, found New York's proper cause standard unconstitutional. In so doing, the Court noted that, after its earlier decisions in *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010), a majority of the Courts of Appeals "coalesced around a two-step framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 597 U.S. at 17. The Court rejected the two-step, means-ends analytical framework Circuit Courts

[4] The defendant in *Fincher* argued he had an affirmative defense under *United States v. Miller, 307 U.S. 174 (1939) and United States v. Hale, 978 F.2d 1016 (8th Cir. 1992),* that his possession of the guns was reasonably related to a well-regulated militia and therefore protected by the Second Amendment. *Fincher,* 538 F.3d at 871. Although the Eighth Circuit affirmed the district court's ruling related to Fincher's affirmative defense under *Hale*, it's determination that the Second Amendment did not protect the weapons at issue rested on its application of *Heller*. *Id.*

of Appeals (but not the Eighth Circuit) had developed for addressing Second Amendment challenges and instead articulated the following framework:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)).

Mays suggests that *Bruen* and similar decisions undermined or abrogated *Fincher's* holding. The undersigned disagrees. Two years after *Bruen* was decided, the Eighth Circuit reaffirmed *Fincher* in a brief *per curiam* opinion in *United States v. Dolphin*, Case No. 24-2040, 2024 WL 4799546, at *1 (8th Cir. Nov. 15, 2024) (per curiam). The defendant in *Dolphin* argued that his conviction for possessing a machinegun violated the Second Amendment. *Id.* The Eighth Circuit affirmed the conviction, citing *Fincher* for the proposition that the possession of a machinegun is "not protected by the Second Amendment." *Id.*

In *United States v. Charles,* the Eighth Circuit rejected a facial challenge to

§ 922(o) on grounds that the class of firearms defined as machineguns includes machineguns that are not bearable arms. 159 F.4th 545, 547-48 (8th Cir. 2025) (following *United States v. Rahimi*, 602 U.S. 680 (2024)). In reaching that conclusion, the majority in *Charles* acknowledged that, in *Fincher,* the Eighth Circuit "previously considered the restrictions on machine gun possession under §922(o) and held they were constitutional under the Second Amendment. *Id.* at 546. The majority also recognized that the decision in *Fincher* "relied on the plain text of the Second Amendment, which the Supreme Court later characterized [in *Bruen*] as the first step in a proper Second Amendment analysis." *Id.* The court noted that *Fincher* did not "engage in the means-end scrutiny that some circuits applied but was ultimately

rejected by the Supreme Court [in *Bruen*].” *Id.* The majority nevertheless declined to address Charles’s assertion that “*Fincher* and *Heller* have been undermined by the Supreme Court’s subsequent opinions in *Bruen* and *Rahimi*. *Id.* at 547. The court opted instead to dodge the question altogether by analyzing Charles’s facial challenge under the analysis articulated by the Supreme Court in *Rahimi*—namely, whether defendant could “establish that no set of circumstances exist[s] under which the Act would be valid.” *Rahimi,* 602 U.S. at 689. The majority in *Charles* ultimately concluded that “[b]ecause §922(o) is constitutional in some of its application, [Charles’s] facial challenge fails.” *Charles,* 159 F.4th at 548.

In a concurring opinion, Chief Judge Colloton concluded that “*Fincher* is binding precedent for this panel and squarely forecloses the constitutional challenge raised by Charles.” *Id.* (Colloton, J., concurring). Judge Colloton also responded to Charles’s assertions that *Bruen* undermined *Fincher*:

> Charles relies on [*Bruen*] but that decision does not undermine *Fincher.* This court in *Fincher* did not employ the sort of means-end scrutiny that was disapproved in *Bruen.* Rather, *Fincher* applied *Heller*'s analysis based on text and historical understanding. *Bruen* then reaffirmed the same “test” that was set forth in *Heller*, and made the constitutional standard endorsed in *Heller* more explicit. *Bruen* cited *Heller*'s explanation that the Second Amendment protects only the carrying of weapons that are in common use at the time, as opposed to those that are highly unusual in society at large. *Fincher* . . . faithfully applied *Heller* and reasonably came to the only conclusion that could logically follow: § 922(o)'s ban on machinegun possession is constitutional. Charles asserts that *Fincher* (and apparently *Heller*) was incorrect about history and tradition or common use of machine guns, but this panel cannot overrule *Fincher.*

*Id.* at 548 (internal citations and quotations omitted).

Although the *Heller* common use analysis applied in *Fincher* was reaffirmed in *Bruen,* the undersigned cannot say that *Fincher’s* pre-*Bruen* analysis squares exactly with the two-step test articulated in *Bruen.* For example, Mays suggests that *Fincher* is at odds with *Bruen* because, under *Bruen,* the inquiry about whether machineguns are in common use should be made in step two of the analysis; but that inquiry was made at step one of the analysis in *Fincher*. ECF No. 54, at p. 6-7. Indeed, as the Third Circuit recently recognized, the question of whether the “common use” inquiry should be

conducted at *Bruen's* first or second step "has divided [the] circuits." *Ass'n. of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey,* ____ F.4th___, 2026 WL 2075513 *1, *11 n 21 (3rd Cir. July 17, 2026). Given the uncertainty around what impact, if any, *Bruen* may have had on the analysis adopted by the Eighth Circuit in *Fincher,* and considering the Eighth Circuit's repeated affirmation of its holding in *Fincher,* the undersigned agrees with the reasoning in Judge Colloton's concurring opinion in *Charles* and rejects Mays's arguments for the same reasons articulated in the concurring opinion in *Charles*—namely, *Fincher* is still binding circuit precedent.

As the Eighth Circuit has explained, one panel can only re-examine a prior panel decision "if [the prior panel decision] were repudiated or undermined by later authority, such as a statute, an intervening Supreme Court decision, or *en banc* decision." *Dean v. Searcy*, 893 F.3d 504, 511 (8th Cir. 2018) (citation and internal quotations omitted), cert. denied, 139 S. Ct. 1291 (2019). The undersigned concludes that *Fincher* remains good law because it has not been repudiated or undermined by any statute or *en banc* decision, and the undersigned cannot fairly say that *Bruen* or *Rahimi* necessarily or implicitly overruled *Fincher*. Other courts in the Eighth Circuit that have considered this issue after *Bruen* have likewise concluded that it is foreclosed by *Fincher*. *See United States v. Bolden,* 2024 WL 5106477 *1 (E.D. MO December 13, 2024); *United States v. Charles,* 2024 WL 4338662 *2 (W.D. Arkansas Sept. 27, 2024); *United States v. Hart*, 2024 WL 992632 (D. Minn. Jan. 3, 2024) (finding that the court could not "conclude that Fincher is no longer good law") (citation omitted).

Mays's facial challenge to §922(o) is foreclosed by the Eighth Circuit's recent decision in *Charles* even if this Court determined that *Fincher* is not binding Eighth Circuit precedent. As discussed above, applying *Rahimi*, the majority in *Charles* ultimately concluded that §922(o) survived Charles's facial challenge "[b]ecause §922(o) is constitutional in some of its application." *Charles,* 159 F.4th at 548. For the foregoing reasons, Mays's constitutional challenge fails because this Court is bound to "apply the

precedent of this Circuit." *U.S. v. Hood,* 342 F.3d 861, 864 (8th Cir. 2003) (citing *U.S. v. Collins,* 321 F.3d 691, 698 n.5 (8th Cir. 2003)).

Because the undersigned has determined Mays's challenge to §922(o) is foreclosed by *Fincher* and *Charles,* the undersigned will not address Mays's remaining arguments except to point out that another court in this district recently considered and rejected similar arguments in *Bolden,* 2024 WL 5106477 *1-2. Specifically, the defendant in *Bolden* argued that *Fincher* no longer applies because ATF statistics establish machineguns are not "unusual." *Id.* at *2. Like Mays, the defendant in *Bolden* relied on Justice Alito's concurring opinion in *Caetano v. Massachusetts,* which concluded that the state's categorical ban on stun guns was unconstitutional due to the wide ownership of the device. 577 U.S. 411, 420 (2016) (Alito, J. concurring). The court in *Bolden* noted a nearly identical argument had recently been rejected by a court in the Sixth Circuit because "Justice Alito's reasoning did not secure a majority of the Court" and "*Caetano* concerned a weapon designed to be non-lethal, something that cannot be said of machineguns." *Bolden,* 2024 WL 5106477 *2. The court in *Bolden* noted that after *Heller* the defendant's arguments "consistently have been rejected by the many courts nationally that have considered the constitutionality of section 922(o) and "after *Bruen* the consensus among district courts remains that machineguns are not covered by the plain text of the Second Amendment. *Id.* (collecting cases). The court's discussion in *Bolden* regarding arguments that are nearly identical to those raised in this case by Mays only deepens this Court's doubts about the merits of the additional arguments Mays has raised in this case.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's motion be denied.

In accordance with the Memorandum Opinion above,

**IT IS HEREBY RECOMMENDED** that Defendant Nicholas Mays's Motion to Dismiss the Indictment (ECF No. 54) be **DENIED.**

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be conducted before the **Honorable Matthew S. Schelp.** Judge Schelp will enter a separate order setting the trial date.

Dated: August 17, 2026.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE